IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TIMOTHY LEE MITCHELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24cv677 |
| | ) | |
| TRANS-WEST, INC., MEARS GROUP, | ) | |
| INC., FOREMOST INDUSTRIES LP, | ) | |
| FOREMOST EQUIPMENT LP, AND | ) | |
| FOREMOST UNIVERSAL LP, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

In this product liability action brought by Plaintiff Timothy Mitchell, Defendant Trans-West, Inc. ("Trans-West") moves to dismiss Mitchell's claim against it alleging failure to warn on the grounds it fails to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 34.) The motion is fully briefed and ready for resolution. (Docs. 35; 41; 49.) For the reasons set forth below, Trans-West's motion will be denied.

I.  BACKGROUND

The allegations of the complaint, taken in the light most favorable to Mitchell, show the following.

Mitchell brings the present action against Trans-West and a number of co-Defendants who he claims were responsible for his injury. In his amended complaint (the "complaint"), he alleges

that on July 28, 2021, he suffered severe injuries while he and an employee of Delta Directional (a subcontractor not party to this action) were operating a hydrovac truck ("Truck #5304") during installation of a natural gas line near Fayetteville, North Carolina. (Doc. 27 ¶¶ 39-88). Mitchell alleges he was injured when overpressure caused a flange cap to blow off of the truck's sludge pump component, striking him in the upper body and spraying him with hot mud. (Id. ¶ 87.)

Relevant to the motion before the court, Mitchell alleges that Trans-West sold and/or leased Truck #5304 to his employer. (Id. ¶ 34.) He further alleges that Trans-West had the opportunity to inspect the hydrovac installed on Truck #5304, including an inspection of any and all warnings, labels and/or instructions, or the lack thereof. (Id. ¶52.) Mitchell alleges that had any of several warnings and/or instructions been present on Truck #5304 or the hydrovac, he would not have been injured. (Id. ¶¶ 89-92.) He asserts his claim for failure to warn under Section 99B of the North Carolina General Statutes against Trans-West in Count Four of the complaint. (Id. ¶¶ 109-113.)

## II. ANALYSIS

### A. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P.

2

(8)(a)(2).  Under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the plaintiff's favor, Ibarra v. United States, 120 F.3d 472, 474 (4th Cir. 1997).  However, mere legal conclusions are not accepted as true, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**B. Section 99B**

Mitchell's failure to warn claim against Trans-West arises under Section 99B, which provides in relevant part:

> (a) No manufacturer or seller of a product shall be held liable in any product liability action for a claim based upon inadequate warning or instruction unless the claimant proves that the manufacturer or seller acted unreasonably in failing to provide such warning or instruction, <u>that the failure to provide adequate warning or instruction was a proximate cause of the harm</u> for which damages are sought, and also proves one of the following:

3

> (1) At the time the product left the control of the manufacturer or seller, the product, without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.
>
> (2) After the product left the control of the manufacturer or seller, the manufacturer or seller became aware of or in the exercise of ordinary care should have known that the product posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

N.C. Gen. Stat. § 99B-5 (emphasis added). Trans-West argues that Mitchell fails to state a claim for two reasons: first, because he has not pleaded facts that allow an inference of causation; and second, because the facts alleged show that Trans-West was a "mere conduit" for Truck #5304 not subject to liability under Section 99B-2(a). (Doc. 35 at 5–9.) Each ground will be addressed in turn.

### 1. Proximate Causation

Trans-West first argues that Mitchell has not alleged sufficient facts to plausibly show that Trans-West's failure to warn about the risks of an overpressure and/or pressure differential caused his injuries. (Doc. 35 at 6.) While Mitchell alleges generally that Trans-West's failure to provide adequate warning proximately caused his injuries (Doc. 27 ¶ 112), Trans-West maintains that he has not pleaded specific facts related to

4

Trans-West's involvement that could support a finding of proximate causation. (Doc. 35 at 7.) In particular, Trans-West argues that Mitchell has not alleged that it knew or should have known of the dangers that caused his injuries. (Id.)

The complaint alleges that Trans-West not only sells hydrovac trucks, but services them, conducts demonstrations of the trucks it sells, and provides on-site training to customers who purchase them. (Doc. 27 ¶¶ 51-56.) Mitchell also alleges that, as a result, "Trans-West had a reasonable opportunity to inspect the hydrovac on the Hydrovac Truck #5034, including an inspection for any and all warnings, labels and/or instructions on the hydrovac and Hydrovac Truck #5034, or lack thereof." (Id. ¶ 52.) Further, he alleges that Trans-West advertises that "[b]ecause [it] has been in the business of selling and servicing hydrovac trucks for years, our team knows which truck is best suited to your job." (Id. ¶ 54.) As Mitchell argues, these facts support a reasonable inference that Trans-West knew or should have known that an over-pressurization situation like that which caused his injuries could occur and that it was not warned against. (Doc. 41 at 6-7.)

Trans-West also argues that Mitchell has not alleged that he or the Delta Directional employee would have read, relied on, or heeded any of the warnings that Mitchell contends should have been present. (Doc. 49 at 7 & n.1.) To be sure, the complaint specifically alleges that had any such warnings been present,

5

Mitchell would not have been injured.  (Id. ¶¶ 89-92.)  This supports the permissible inference that renders his failure to warn claim plausible.

Trans-West relies on Presnell v. Snap-On Securecorp, Inc., 583 F. Supp. 3d 702, 710 (M.D.N.C. 2022).  However, that case is distinguishable.  There, the court granted the defendant's motion to dismiss when the hammer that caused the plaintiff's injury bore a warning label that adequately conveyed the risk of the very injury the plaintiff suffered.  Id. at 709.  The court also noted that there was no claim "that the warning label played any role in the decision" to use the hammer.  Id. at 710 (citing Burgess v. Pfizer, Inc., NO. 7:19-CV-235-FL, 2020 WL 1812010, at *5 (E.D.N.C. Apr. 9, 2020) (granting motion to dismiss where the plaintiff did not allege that a prescription drug's existing warning label affected his decision to use the drug)).  Here, Mitchell alleges that neither the flange cap, the pump component, the hydrovac, nor Truck #5304 contained any warnings or instructions whatsoever about the risks associated with an overpressure and/or pressure differential of the kind that caused his injuries and that, had such a warning been given, it would have been heeded.  (Doc. 27 ¶¶ 80-84, 89-92.)

These allegations, when viewed in the light most favorable to Mitchell, reasonably imply that such warnings would have prevented Mitchell's injuries because he, the Delta Direction employee, or

6

both would have read and heeded them. Therefore, the motion to dismiss on this ground will be denied.

### 2. "Mere Conduit"

Alternatively, Trans-West argues that it is protected from liability under Section 99B's exemption for being a "mere conduit" for Truck #5304. (Doc. 35 at 8.) Trans-West contends that because it was not involved in the design or manufacture of the vehicle and did nothing more than act as a "mere conduit," it cannot be liable under Section 99B as a matter of law. (Doc. 35 at 9 (citing Travelers Ins. Co. v. Chrysler Corp., 845 F. Supp. 1122, 1124 (M.D.N.C. 1994)).) Mitchell contends that the complaint alleges that Trans-West is more than a mere conduit and that, in any event, the exemption is an affirmative defense not suitable for resolution at this stage. (Doc. 41 at 8-11.)

Section 99B provides:

> (a) No product liability action, except an action for breach of express warranty, shall be commenced or maintained against any seller when the product was acquired and sold by the seller in a sealed container or when the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of, unless the seller damaged or mishandled the product while in his possession; provided, that the provisions of this section shall not apply if the manufacturer of the product is not subject to the jurisdiction of the courts of this State or if such manufacturer has been judicially declared insolvent.

N.C. Gen. Stat. § 99B-2(a). As Trans-West notes (Doc. 35 at 8), Crews v. W.A. Brown & Son, Inc., stated that where the seller of a product made by a reputable manufacturer "acts as a mere conduit and has no knowledge or reason to know of a product's dangerous propensities, [the seller] 'is under no affirmative duty to inspect or test for a latent defect, and therefore, liability cannot be based on a failure to inspect or test in order to discover such defect and warn against it.'" 416 S.E.2d 924, 928 (N.C. Ct. App. 1992) (quoting Sutton v. Major Prods. Co., 372 S.E.2d 897, 900 (N.C. Ct. App. 1988)). But as Mitchell points out, the Crews court went on to note that a seller who assembles and installs the product acts as more than a "mere conduit," thus bearing the duty to exercise reasonable care in assembling, installing and inspecting the product as well as to warn of hazards attendant to the assembled and installed product's use. 416 S.E.2d at 928. This duty to warn arises where the seller has "actual or constructive knowledge of a particular threatening characteristic of the product" and simultaneously "has reason to know that the purchaser will not realize the product's menacing propensities for himself." Id. (citations omitted). Thus, in Crews, the court held that the seller of a walk-in freezer was acting as more than a "mere conduit" when it also assembled and installed the walk-in freezer for the purchaser. Id.

Here, Mitchell alleges that in addition to selling or leasing

8

Case 1:24-cv-00677-TDS-JEP   Document 69   Filed 09/30/25   Page 8 of 10

hydrovac trucks, Trans-West services them and provides demonstrations and on-site training in their use. (Doc. 27 ¶¶ 53-56.)[1] These facts, construed as they must be in Mitchell's favor, support the conclusion that Trans-West acts as more than a "mere conduit" for the hydrovac trucks it sells, including Truck #5304, thus precluding the court from ruling as a matter of law.

Moreover, by citing to Travelers, Trans-West acknowledges that it is indirectly invoking a specific statutory defense under Section 99B; namely, that "the product was acquired and sold by the seller under circumstances in which the seller was afforded no reasonable opportunity to inspect the product in such a manner that would have or should have, in the exercise of reasonable care, revealed the existence of the condition complained of." N.C. Gen. Stat. § 99B-2(a); see Travelers, 845 F. Supp. at 1124. Here, Mitchell specifically alleges that Trans-West had a reasonable opportunity to inspect the hydrovac on Truck #5304 to learn of its defect. (Doc. 27 ¶ 52.) This raises a fact question, and the burden of proof as to it rests with Trans-West. At this motion to dismiss stage, the court is precluded from making an evidentiary finding in Trans-West's favor. Consequently, Trans-West's motion

---

[1] Mitchell also points to affidavits filed by co-defendants Foremost Industries LP, Foremost Equipment LP, and Foremost Universal LP, stating that Trans-West shipped the chassis for Truck #5304 to the aforementioned Defendants in Canada, where they manufactured and assembled the final truck. (Doc. 57-3 at 2, 5.) But because the present motion is based on the pleadings, the court does not consider this evidence at this stage.

9

to dismiss on this ground must be denied.

**III. CONCLUSION**

For the reasons stated,

IT IS ORDERED that Trans-West's motion to dismiss (Doc. 34) is DENIED.

/s/ Thomas D. Schroeder<br>United States District Judge

September 30, 2025