```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
```

TIMOTHY LEE MITCHELL,              )
                                   )
          Plaintiff,               )
                                   )
     v.                            )      1:24cv677
                                   )
TRANS-WEST, INC., MEARS GROUP,     )
INC., FOREMOST INDUSTRIES LP,      )
FOREMOST EQUIPMENT LP, AND         )
FOREMOST UNIVERSAL LP,             )
                                   )
          Defendants.              )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

In this product liability action brought by Plaintiff Timothy Mitchell, Defendants Foremost Industries LP ("Foremost Industries"), Foremost Equipment LP ("Foremost Equipment"), and Foremost Universal LP ("Foremost Universal," and together with Foremost Industries and Foremost Equipment, the "Foremost Defendants") move to dismiss Mitchell's claims against them on the grounds that this court lacks personal jurisdiction pursuant to Rule 12(b)(2). (Doc. 56.) The motion is fully briefed and ready for resolution. (Docs. 57; 58; 64.) For the reasons set forth below, the motion will be granted.

I.   BACKGROUND

Mitchell brings the present action against the Foremost Defendants and a number of co-Defendants whom he claims were responsible for his personal injury. In his amended complaint

(the "complaint"), he alleges that on July 28, 2021, he suffered severe injuries while he and an employee of Delta Directional (a subcontractor not party to this action) were operating a hydrovac truck ("Truck #5304") during installation of a natural gas line near Fayetteville, North Carolina. (Doc. 27 ¶¶ 39-88). Mitchell alleges he was injured when overpressure caused a flange cap to blow off of the truck's sludge pump component, striking him in the upper body and spraying him with hot mud. (Id. ¶ 87.)

Relevant to the motion before the court, Mitchell alleges that the Foremost Defendants designed, manufactured, assembled, tested, inspected, warranted, sold and/or supplied, and installed the hydrovac on Truck #5304. (Id. ¶ 48.) He further alleges that the Foremost Defendants had the opportunity to inspect the hydrovac installed on Truck #5304, including an inspection of any and all warnings, labels and/or instructions, or the lack thereof. (Id. ¶ 49.) Had any of several hypothetical warnings and/or instructions been present on Truck #5304 or the hydrovac, he claims, he would not have been injured. (Id. ¶¶ 89-92.) He asserts his claim for failure to warn under Section 99B of the North Carolina General Statutes against the Foremost Defendants in Count Three of the complaint. (Id. ¶¶ 104-108.) The Foremost Defendants now move to dismiss the complaint on the ground the court lacks personal jurisdiction over them.

2

## II. ANALYSIS

### A. Legal Standard

"When a federal court sits in diversity, it 'has personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jurisdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process.'" Perdue Foods LLC v. BRF S.A., 814 F.3d 185, 188 (4th Cir. 2016) (quoting Nichols v. G.D. Searle & Co., 991 F.2d 1195, 1199 (4th Cir. 1993)). North Carolina's long-arm statute "is construed to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001) (citing Century Data Sys., Inc. v. McDonald, 428 S.E.2d 190, 191 (N.C. Ct. App. 1993)). "Thus, the dual jurisdictional requirements collapse into a single inquiry as to whether the defendant has such 'minimal contacts' with the forum state that 'maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Personal jurisdiction can be general or specific. Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a

3

corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." Id. at 924. Specific jurisdiction "covers defendants less intimately connected with a State, but only as to a narrower class of claims." Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021). To exercise specific personal jurisdiction, the court must assess "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 352 (4th Cir. 2020) (internal quotation marks omitted).

For the purposeful availment inquiry, courts will assess whether the defendant has certain "minimum contacts" with the forum. See Ford Motor Co., 592 U.S. at 359 (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The contacts must show "the defendant deliberately 'reached out beyond' its home — by, for example, 'exploi[ting] a market' in the forum State or entering a contractual relationship centered there." Id. (quoting Walden v. Fiore, 571 U.S. 277, 285 (2014)); see also id. at 360 (discussing requirement that defendant fairly have "clear notice" that it could be haled into court for its conduct and collecting cases).

4

As the Supreme Court explained in International Shoe:

> [T]o the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations; and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

Int'l Shoe Co., 326 U.S. at 319. "[W]ith respect to interstate contractual obligations, [the Supreme Court] ha[s] emphasized that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp., 471 U.S. at 473 (quoting Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950)). "[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, [] physical entry into the State — either by the defendant in person or through an agent, goods, mail, or some other means — is certainly a relevant contact." Walden, 571 U.S. at 285 (internal citations omitted). By contrast, "random, isolated, or fortuitous" contacts, Keeton v. Hustler Mag., Inc., 465 U.S. 770, 774 (1984), or the "unilateral activity of another party or a third person," Hanson v. Denckla, 357 U.S. 235, 253 (1958), do not give rise to personal jurisdiction. Rather, the contacts must create a "substantial connection" with the forum state, although this connection need

5

not be as extensive as is necessary for general jurisdiction. ESAB Grp., Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997) (citation omitted). In conducting the due process inquiry, the court considers those contacts with the forum at the time of the accident. See Rossman v. State Farm Mut. Auto. Ins. Co., 832 F.2d 282, 287 n.2 (4th Cir. 1987); Stein v. Horwitz, 191 F.3d 448, 1999 WL 710355, at *2 (4th Cir. Sept. 13, 1999) (unpublished opinion).

Moreover, a plaintiff's claim must "must arise out of or relate to the defendant's contacts with the forum." Ford Motor Co., 592 U.S. at 359 (internal quotation marks omitted). This requires that there must be an "affiliation" or a "relationship" between the contacts and the controversy, but the Supreme Court has clarified that the plaintiff need not show that his claim "came about because of the defendant's in-state conduct." Id. at 361-63 (rejecting "causation-only approach").

Finally, the court must determine that the exercise of personal jurisdiction would be "constitutionally reasonable." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 279 (4th Cir. 2009). Relevant to this inquiry are "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in

6

furthering substantive social policies." Id. (citing Burger King Corp., 471 U.S. at 477).

"Under Rule 12(b)(2), a defendant must affirmatively raise a personal jurisdiction challenge, but the plaintiff bears the burden of demonstrating personal jurisdiction at every stage following such a challenge." Grayson v. Anderson, 816 F.3d 262, 267 (4th Cir. 2016). A plaintiff's burden varies "according to the posture of a case and the evidence that has been presented to the court." Id. at 268. Where a court relies on "only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a prima facie showing of personal jurisdiction to survive the jurisdictional challenge." Id. However, when the parties have conducted jurisdictional discovery and submitted evidence beyond the pleadings, as is the case here, the court must hold the plaintiff to his burden "of proving facts, by a preponderance of the evidence, that demonstrate the court's personal jurisdiction over the defendant." Id.; see also Hamburg Sudamerikanische Dampfschiffahrts-Gesellschaft, KG v. Texport, Inc., 954 F. Supp. 2d 415, 419–20 (D.S.C. 2013) (requiring plaintiff to establish jurisdiction by a preponderance of the evidence when the parties had conducted jurisdictional discovery).

7

B.  **Specific Jurisdiction**

Mitchell does not argue that the court has general jurisdiction over the Foremost Defendants, and the facts do not suggest it.  (See Doc. 58 at 18-19.)  Thus, the court considers only whether it may exercise specific jurisdiction.

To satisfy the first factor – purposeful availment – Mitchell must show by a preponderance of the evidence that the Foremost Defendants, through their contacts with North Carolina, purposefully availed themselves of the privilege of conducting business in the state.

1.  **"Stream of commerce" theory**

Mitchell contends that "[t]he Foremost Defendants deliver their products into the stream of commerce in the United States with the expectation that their products will be purchased by consumers in North Carolina."  (Doc. 58 at 14 (citing Bush v. BASF Wyandotte Corp., 306 S.E.2d 562, 566 (N.C. App. 1983)).)  The Foremost Defendants respond that "Foremost Equipment relinquishes control of the hydrovac units in Canada when Trans-West takes them back for importing to the United States."  (Doc. 64 at 9 (citing Doc. 57-2 at 20).  Tran-West then transports the hydrovac units "to its home office in Brighton, Colorado or secondary locations in Kansas and Missouri."  (Doc. 64 at 8 (citing Doc. 57-2 at 21-22).)  The Foremost Defendants acknowledge that Trans-West has sold hydrovac trucks to NG Companies, which is headquartered in

8

Colorado and "has several offices throughout the United States, including one in Charlotte, North Carolina," but maintain that they "have not located information indicating what hydrovac trucks may have been sold to NG Companies that ended up in North Carolina." (Doc. 57-1 at 3.)

A defendant's placement of goods into the stream of commerce "with the expectation that they will be purchased by consumers within the forum State" may indicate purposeful availment. J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 881-82 (2011) (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980)). In addition to knowing that its products will sweep into the forum state, the defendant must make a "specific effort" to target the forum state. Williams v. Romarm S.A., 116 F.Supp.3d 631, 640 (D. Md. 2015) (quoting Nicastro, 564 U.S. at 888-89 (Breyer, J. concurring)). Here, the Foremost Defendants do not directly sell or ship any hydrovac trucks to any customer in North Carolina, and there is no evidence that they sold or shipped the truck at issue into the state. (Doc. 57-1 at 3.) The Foremost Defendants argue (without objection) that their trucks are delivered to Trans-West in Canada, and Trans-West takes responsibility for them and transports them to its own facilities in one of three states, none of which is North Carolina. (Doc. 57

9

at 15; Doc. 64 at 70.)[1] Thus, Foremost Defendants' placement of products into the stream of commerce does not amount to purposeful availment of the laws of North Carolina unless Mitchell can show that their other contacts with North Carolina reflect a "specific effort" to target the state. Hutton v. Hydra-Tech, Inc., 213 F. Supp. 3d 746, 755-56 (M.D.N.C. 2016) (finding sale of product F.O.B. to a distributor located in another state insufficient to show purposeful availment, citing cases).

### 2. North Carolina contacts

To support his stream of commerce theory, Mitchell principally offers three contacts that connect the Foremost Defendants directly to North Carolina. Each is addressed in turn.

First, Mitchell notes that the Foremost Defendants have made sales in North Carolina. (Doc. 58 at 14.) Specifically, Mitchell points to the testimony of Michael McCarthy, employed by Foremost Industries Limited, a "senior management group" that oversees Foremost Industries, Foremost Equipment, and Foremost Universal. (Doc. 58-3 at 11-13.) In his testimony, McCarthy acknowledges only that Foremost Industries has sold unstated drilling parts on three unstated occasions to three separate, unidentified North Carolina entities beginning in 2010. (See id. at 36, 48, 58.)

---

[1] The Foremost Defendants' initial brief cites a response to a document request, but the response does not address the point, and the actual documents produced are not provided as an attachment. Similarly, their reply brief references deposition testimony about a document, which is not provided. Nevertheless, Mitchell does not contest the point.

10

The Foremost Defendants do not contest that these transactions occurred but maintain that the North Carolina contacts by the individual Foremost Defendants cannot be imputed to one another.[2] Thus, they contend that these sales by Foremost Industries, which produces drilling trucks and equipment, cannot be imputed to Foremost Equipment, which produces hydrovac trucks including Truck #5304. (See Doc. 64 at 2, 8-9.)

Second, Mitchell points to a pair of emails sent by "Foremost" employee Stefan Sigurdson to prospective customers based in North Carolina. (Doc. 58 at 6; Doc. 58-10.) In the first email, dated April 30, 2021, Sigurdson provides a prospective North Carolina customer a quote for a "DR12 Drilling Rig" pursuant to a conversation the day before. (Doc. 58-10 at 2.) In the second email, dated September 25, 2024, Sigurdson emails the prospective customer information regarding used drilling products for sale in Kentucky, Georgia, Quebec, and Ontario, as well as contact information for another individual with an email address at "Foremost.ca," pursuant to a prior conversation at a trade show.

---

[2] The jurisdictional allegations in the amended complaint do not differentiate between Foremost Equipment, Foremost Universal, and Foremost Industries. (Doc. 27 ¶¶ 16-29.) Mitchell argues that the Foremost Defendants should be addressed together for purposes of jurisdiction because they are affiliated entities which are "parts of the same whole." (Doc. 58 at 9.) The Foremost Defendants respond that this argument is tantamount to an unpled alter-ego theory of jurisdiction. (Doc. 64 at 3.) Because the court finds that it lacks jurisdiction over all of the Foremost Defendants regardless, it need not reach this issue.

11

(Id. at 3.) Foremost Defendants again respond that Sigurdson is not an employee of Foremost Equipment and that these solicitation emails concerning drilling rigs "had nothing to do with hydrovac trucks or Foremost Equipment LP." (Doc. 64 at 2.) Further, they note that Mitchell has presented no evidence that any of the Foremost Defendants has ever attended a trade show in North Carolina. (Id.) Most obviously, the second email post-dates the filing of this action on August 12, 2024, so it will not be considered whatsoever. Rossman, 832 F.2d at 287 n.2.

Third, Mitchell points to an email chain initiated by an email from Trans-West to two individuals with "Foremost.ca" email addresses; the chain eventually included (either directly or by carbon copy) several North Carolina businesses regarding the diagnosis and repair of truck #5304 following the accident that caused Mitchell's injuries (the "repair email chain"). (Doc. 58 at 17-18; Doc. 58-11.) The earliest message in this email chain is dated April 26, 2022. (Doc. 58-11 at 19.) Because Mitchell's claim arose the day he was injured, July 28, 2021, and the email chain addressed subsequent remedial efforts, the court will also not consider the repair email chain, which was initiated after the accident, or the second solicitation email dated September 25, 2024, which postdates the filing of the complaint. Rossman, 832 F.2d at 287 n.2.

This leaves the first solicitation email dated April 30, 2021,

12

and the three parts sales.  Assuming without deciding that those contacts are imputable to all Foremost Defendants, they do not show by a preponderance of the evidence that the Foremost Defendants purposefully availed themselves of the privilege of doing business in North Carolina.  Mitchell has not presented any evidence regarding the circumstances or details of the three North Carolina sales.  From the deposition testimony that Mitchell cites, it is unclear whether the Foremost Defendants or the customers initiated the sale.  Mitchell has not provided any dates for the parts sales, only testimony that the sales occurred "at points from 2010 to the present," meaning three sales over a 15-year period.  (Doc. 58-3 at 36.)  Similarly, the first solicitation email does not indicate whether Sigurdson or the prospective customer initiated the preceding in-person conversation, where the conversation occurred, or whether any sale resulted.  (Doc. 58-10 at 2.)

In sum, Mitchell has not presented evidence that the Foremost Defendants or their employees were ever present in North Carolina, targeted North Carolina specifically as a market for their products, or initiated any of the three North Carolina sales recorded in the past fifteen years.  The preponderance of the evidence does not support a finding that the Foremost Defendants' contacts with North Carolina created a "substantial connection" to the state.  ESAB, 126 F.3d at 625.  Rather, it appears that the

limited contacts Mitchell relies on in his response were "random, isolated, or fortuitous." Keeton, 465 U.S. at 774. Because Mitchell has not met his burden to show that the Foremost Defendants purposefully availed themselves of the privilege of doing business in North Carolina, he cannot show that the court has specific personal jurisdiction over them, and the court need not reach the remaining factors. The Foremost Defendants' motion to dismiss will therefore be granted.

## III. CONCLUSION

For the reasons stated,

IT IS ORDERED that the Foremost Defendants' motion to dismiss (Doc. 56) is GRANTED and the complaint against them is DISMISSED.

/s/   Thomas D. Schroeder
United States District Judge

November 4, 2025